IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES of AMERICA                                    PLAINTIFF/RESPONDENT

V.                          No.  5:10-CR-50022-JLH
                            No.  5:11-CV-05262-JLH

JUAN R. RODRIGUEZ                                            DEFENDANT/PETITIONER

### REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions, *See ECF No.* 49 filed November 16, 2011, under 28 U.S.C. Section 2255.  The Government filed its Response, *See ECF No.* 54 on December 27, 2011, and the Petitioner [has not filed a Reply] or the Petitioner filed his Reply, *See ECF No.*   on .

### I.  Background

On January 14, 2010, an Arkansas State Probation and Parole Officer, assisted by a Bentonville Police Officer, conducted a parole search at an apartment in Bentonville, Arkansas, shared by Juan B. Rodriguez ("Rodriguez") and parolee Chelsea Mahone ("Mahone"). (PSR, ¶ 8; Plea Agmnt., ¶ 2). The officers discovered approximately four ounces of methamphetamine in a kitchen cabinet. (PSR, ¶ 9; Plea Agmnt., ¶ 2). Rodriguez and Mahone were arrested. (Id.)

Bentonville Police Officers then obtained a search warrant to search the apartment and executed it the same day. (PSR, ¶ 10; Plea Agmnt., ¶ 2). During the execution of the search warrant, officers discovered approximately 336 grams of suspected methamphetamine (PSR, ¶ 10), later determined to be 291 grams of actual methamphetamine. (PSR, ¶ 12; Plea Agmnt., ¶ 2).

Officer also discovered other items commonly used by those who sell methamphetamine and approximately $1,900 in cash in a male's jacket hanging in a bedroom closet. (PSR, ¶ 10; Plea Agmnt., ¶ 2).

Mahone was advised of her Miranda rights and agreed to be interviewed. She stated she and Rodriguez had been distributing methamphetamine and were going to sell the methamphetamine found in the search. (PSR, ¶ 11; Plea Agmnt., ¶ 2). Officers also interviewed several cooperating witnesses who confirmed Rodriguez and Mahone were selling methamphetamine. (Plea Agmnt., ¶ 2).

On March 31, 2010, the grand jury returned a three-count indictment that charged Rodriguez with knowingly possessing with intent to distribute 50 grams or more of methamphetamine (Count One); aiding and abetting the possession with the intent to distribute 50 grams or more of methamphetamine (Count Two); and aiding and abetting the use of a place for the purpose of distributing and using controlled substances (Count Three). (Doc. 2).

On April 26, 2010, Rodriguez appeared with appointed counsel before this Court for arraignment. Rodriguez pled not guilty. (Doc. 8).

On June 7, 2010, the United States filed a request for notice of alibi. (Doc. 24). Rodriguez filed his response on June 17, 2008, and alleged the United States' notice was insufficient under Fed.R.Crim. P. 12.1 and that he was not required to present such information to the United States. (Doc. 26).

On July 20, 2010, Rodriguez appeared before the District Court to plead guilty to Count Two pursuant to a written plea agreement discussed during a change of plea hearing. (Doc. 31). The plea agreement contained a stipulation of the drug quantity in which Rodriguez agreed he

should be held accountable for at least 150 grams but less than 500 grams of actual methamphetamine, with a base offense level 34 under the United States Sentencing Guidelines that corresponded to that drug quantity. (ECF No. 32, ¶ 3). The plea agreement further advised Rodriguez that the maximum penalty for Count Two was imprisonment for 40 years with a mandatory minimum term of imprisonment of 10 years based on the drug quantity. (ECF No. 32, ¶ 9).

At the change of plea hearing, Rodriguez acknowledged that he had read and signed the plea agreement and that he was voluntarily agreeing to plead guilty. (Change of Plea Hearing Transcript, hereinafter "CPT," pp. 4 - 5). The District Court reviewed the stipulation of facts, stipulated drug quantity, the estimated Guidelines level, the term of imprisonment Rodriguez faced based on the mandatory minimum and maximum statutory penalties and the various other provisions contained in the plea agreement, such as the fine amount and term of supervision. (CPT, pp. 5 - 10). The District Court asked Rodriguez if he had any questions about what was reviewed, to which Rodriguez answered "no." The District Court asked Rodriguez if he had reviewed the plea agreement with his attorney and Rodriguez answered affirmatively. (CPT, p. 10). The United States read the basis for the charge against Rodriguez. Once the United States finished, the District Court asked Rodriguez if what the United States related was true and Rodriguez answered affirmatively (CPT, pp. 11 - 13). The District Court then reviewed the proceedings and expressed that it wanted to be certain of the basis for the charge and that Rodriguez wasn't pleading guilty to an offense in which the evidence did not support the conviction. (CPT, p. 14). The District Court then asked Rodriguez if he had any questions and he answered "no." Id. Finally, the Court asked Rodriguez if he was guilty or not guilty as to Count

Two. Rodriguez answered "guilty." Id.

A pre-sentence investigation report ("PSR") was prepared by United States Probation Officer Susan Lee. The PSR set Rodriguez's base offense level at 34. (PSR, ¶ 19). Rodriguez received a 3-level adjustment for acceptance of responsibility which resulted in a total offense level of 31. (PSR, ¶ 31). The Probation Officer found Rodriguez's criminal history category was III. (PSR, ¶ 40). The PSR set forth the statutory mandatory minimum term of imprisonment of 10 years and the maximum term of 40 years. (PSR, ¶ 52). The Probation Officer found that the applicable Guideline imprisonment range was 135 to 168 months. (PSR, ¶ 53). Neither the United States nor Rodriguez objected to the PSR.

Rodriguez's sentencing hearing was November 17, 2010. (ECF No. 45). At the beginning of the hearing, the District Court inquired whether Rodriguez was "satisfied with his [counsel's] advice and service to you?" (Sent. Tr., pp. 19-20). Rodriguez stated under oath that he was satisfied with Mr. Schisler. (Sent. Tr., p. 20). Rodriguez further assured the District Court under oath that he had sufficient time to discuss his case with Mr. Schisler. Id.

Mr. Schisler argued for the mandatory minimum sentence of 120 months imprisonment (Sent. Tr., pp. 24 - 26). The Court then asked Rodriguez if he had any comments. He stated:

> Yes, Your Honor. First of all, I want to apologize to the Court for wasting everybody's time. Secondly, I want to apologize to the United States. I know that I broke the law, and I can't justify my actions. I apologize sincerely, and I wish I could take it back. Sorry for breaking the law, Your Honor.

(Sent. Tr., pg. 27) (emphasis added). The Court then proceeded to sentence Rodriguez to 135 months imprisonment, 5 years supervised release, a $15,000 fine, $100 special assessment, and denial of federal benefits for 5 years. (ECF No. 45; Sent. Tr., pp. 35 - 37).

At the conclusion of sentencing, the Court informed Rodriguez of his right to appeal and informed him he could apply to the Court to make an appeal without cost to him if he qualified for court-appointed appellate counsel. (Sent. Tr., pp. 37 - 38). By Affidavit dated November 30, 2011, Mr. Schisler stated under penalty of perjury that he was not requested by Rodriguez to file a notice of appeal. (Affidavit of Jack Schisler, Attachment 1).

The Defendant filed the current 2255 motion on November 15, 2011 alleging that his attorney was ineffective for: A) failing to advise him of a potential affirmative defense, B) misadvising the Defendant regarding possible penalties, and C) for failing to file an appeal. (ECF No. 49, p. 13).

## II. Discussion

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI*. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000); 2254. *Cox v. Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington.*

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that

counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, (2003).

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

A. **Failing to Advise**

The Defendant first contends that his attorney failed to advise him "of a potential affirmative defenses to the aiding and abetting of Mahone's drug sells [sales]". ECF No. 49, p. 13. While the Defendant does not specifically state what "affirmative defense" his attorney failed to advise him of he list several contentions in his argument which the court will address.

**1. Presence in the Apartment**

The Defendant first argument seems to be that the evidence against him "did not prove anything other than that he was merely present at Mahone's (co-defendant) apartment at the time police and state parole officer's entered Mahone's apartment". However, "mere presence" is not an affirmative defense, but rather a theory of defense. *U.S. v. Meads* 479 F.3d 598, 601 (C.A.8 (Mo.),2007) *citing, United States v. Jara*, 474 F.3d 1018, 1022 (8th Cir.2007) (applying abuse of discretion standard of review to denial of a defendant's requested mere presence instruction); *United States v. Serrano-Lopez*, 366 F.3d 628, 636-37 (8th Cir.2004) (same).

A defendant's mere presence during a police search of a residence is insufficient to sustain a conviction under § 856(a)(1). *Roberts*, 913 F.2d at 220. *1044 "[W]hether a defendant has 'maintained' a place is necessarily a fact-intensive issue that must be resolved on a case-by-case basis." *United States v. Morgan*, 117 F.3d 849, 857 (5th Cir.1997). [P]roof of a defendant's "dominion and control" over a place may be sufficient to show that he "maintains"

that place, *see United States v. Howell*, 31 F.3d 740, 741 (8th Cir.1994) (per curiam), but ... proof of "dominion and control" is not necessary to establish "maintenance" under section 856(a)(1), *see United States v. Clavis*, 956 F.2d 1079, 1091, modified on other grounds, 977 F.2d 538 (11th Cir.1992), cert. denied, 507 U.S. 998, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993).

The Defendant's argument ignores the facts set forth in the Plea Agreement (ECF No. 32) as well as the facts set forth in the Affidavit to the Criminal Complaint (ECF No. 1, p. 2). The apartment was rented in the name of Chelsea Mahone but the utilities were in the name of Juan Rodriguez (ECF No. 32, ¶2a) and all of the furniture belonged to the Defendant. The Defendant was first encountered by law enforcement in the master bedroom of the apartment (Id., ¶5). Methamphetamine and packaging was found in the residence and a search warrant was obtained. As a result of the search warrant 179 grams of methamphetamine was located in a child's bedroom and 157 grams in the kitchen and 17 grams of suspected marijuana in the master bedroom, along with drug paraphernalia and $3,905. (Id., ¶¶8-9). Co-Defendant Mahone admitted that the Defendant was her boyfriend and had lived with her in the residence since 2009 ( (Id., ¶11) and that he was the one "responsible for supplying the Methamphetamine found in the residence". (Id., ¶12). Officers also located approximately $1900 in cash in a male's jacket hanging in the bedroom closet and a drug ledger in a storage place outside. Officers also observed several personal items of the Defendant in the apartment, including mail addressed to the Defendant and rental receipts for the furniture in the Defendant's name (ECF No. 32, ¶2b).

18 U.S.C. § 2 provides in pertinent part that(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. In an aiding-and-abetting case, the government must prove the

Defendant associated himself with the unlawful venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed. *U.S. v. Santana* 524 F.3d 851, 855 (C.A.8 (Iowa),2008) *citing Nye & Nissen v. U.S.*, 336 U.S. at 619 (1949). Thus, in an aiding-and-abetting case, the government is not required to prove that the defendant possessed the controlled substance. *United States v. Castro-Gaxiola*, 479 F.3d 579, 583 (8th Cir.2007).

### 2. Search of the Apartment

The Defendant also seems to assert that his attorney should have filed a motion to suppress the evidence because the "evidence was found in a home that did not belong to" the Defendant. (ECF No. 49, p. 9).

According to the Affidavit attached to the Criminal Complaint (ECF No. 1) the probable cause for the search warrant was the discovery of drugs and paraphernalia as a result of a parole visit by the co-defendant's parole officer. (Id., ¶¶4-5).

As this Supreme Court has pointed out, "parole is an established variation on imprisonment of convicted criminals .... The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471 at 477. "In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements." *Samson v. California* 547 U.S. 843, 850, (2006) quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365, (1998).

The court does not have before it the co-defendant's conditions of parole nor is it clear how the Defendant contends that his attorney should have attacked the initial search of the apartment by the co-defendant' parole officer. All of the Defendant's allegations are just

conclusory in nature. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.) (vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255), cert. denied, 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal).

The court has searched the co-defendant's case and determined that she also did not file any motion to suppress. It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.* 905 F.2d 218, 219 (C.A.8 (Minn.),1990). The Defendant has failed to establish that he suffered any prejudice because of his attorney's failure or refusal to file a motion to suppress.

### 3. Failure to Discover CI or witnesses:

The Defendant contends that his attorney was ineffective for failing to file a motion to identify certain witnesses. (ECF No. 49, p. 20)

This claim appears to address the language set forth in the Plea Agreement's Stipulation of Facts (ECF No. 32). The Defendant's co-defendant, Malone, gave a statement to police after her arrest and implicated the defendant. After reciting this statement in the Plea Agreement the following language appears: "Officers interviewed several cooperating witnesses who also confirmed that Mahone and Rodriguez were selling methamphetamine" (Id., p. 2). The Defendant's argument seems to be that his attorney was ineffective for not obtaining the names of these witnesses. The names of these witnesses do not appear in the record.

In cases involving claims of failure to investigate, a defendant can establish prejudice by showing that the discovery of evidence would have caused counsel to change his

recommendation as to the plea offer. *Hill v. Lockhart*, 474 U.S. 52 at 59 (1985). This assessment "will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Witherspoon v. Purkett*, 210 F.3d 901, 903 -904 (C.A.8 (Mo.),2000)

In this case the co-defendant gave a statement to the police shortly after her arrest and then, on April 29, 2010, she conducted a Proffer Interview with the Government stating that the Defendant was responsible for distributing ½ to 1 pound of methamphetamine per week in the Northwest Arkansas area. (ECF No. 57, p. 42). The details of her proffered testimony are not included in the Defendant's exhibits.

In this case the co-defendant was available to testify. She had given an initial statement at her arrest on January 14, 2010 and gave a statement to the Assistant U.S. attorney on April 29, 2010. At that time she and the Defendant were set to go to trial on June 21, 2010. Her proffer of testimony was obviously made in anticipation of testifying at the Defendant's trial.

"[I]f an accomplice is corroborated as to some particular fact or facts, the jury is authorized to infer that he speaks the truth as to all." *Bennett v. State*, 284 Ark. 87, 679 S.W.2d 202, 204 (1984). Special instructions for accomplice testimony are only required "where the witness's testimony concerning the defendant's participation in the offense is uncorroborated." *United States v. Schoenfeld*, 867 F.2d 1059, 1061 (8th Cir.1989). In cases where there is corroborating evidence, further instruction to the jury to treat accomplice testimony with caution is not needed. *United States v. Kehoe*, 310 F.3d 579, 593 (8th Cir.2002).

The evidence is clear that large quantities of drugs and cash were found in common areas of the apartment, the utilities were in the name of the Defendant, the Defendant was in the Master bedroom when police first entered the apartment, the furniture in the apartment was rented by the

Defendant, and a large amount of cash was located in a male jacket. The record also shows that the police recovered from the apartment, along with all of the drugs and paraphernalia, a black "agenda" notebook that they believed to be a drug ledger because it contained hand written entries consistent with pay and owe records. (ECF No. 57, p. 36, ¶7). In addition a note was found in the Master bedroom that stated "I know I owe you a lot but can I get one more ball cause I'm a gram short on the ball 4-Tammy". (Id., ¶8).

It is unclear how the discovery of the names of additional witnesses could have been beneficial to the Defendant. It is clear that the Defendant made a decision to plea faced with the testimony of a co-defendant and the evidence seized at the time of their arrest. After carefully reviewing the record, the court finds that Defendant has failed to make a sufficient showing of prejudice necessary for the granting of habeas relief.

**B. Possible Penalties**

The Defendant also asserts that his attorney was ineffective for "misadvising regarding the possible penalties". (ECF No. 49, p. 15).

The Defendant does not specifically state what misinformation his attorney provided to him, but, the Defendant makes reference to the Fair Sentencing Act of 2010[1]. However, the Defendant has failed to show how this Act is applicable in his case. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.) (vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255), cert. denied, 479 U.S. 965 (1986); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal). The Defendant seems to argue that he might have been entitled to

---

[1] The Fair Sentencing Act of 2010, Pub.L. No. 111-220, 124 Stat. 2372 (2010), which was signed into law by President Obama on August 3, 2010, raised the quantity of crack cocaine that must be distributed from 50 grams to 280 grams.

some sentencing reduction because he was a minimal participant (ECF No. 49, p. 42).

The co-defendant's statement stated that the Defendant supplied the drugs, he paid the rent on the apartment and the utilities and furnished all of the furniture for the apartment and substantial quantities of drugs, paraphernalia and money was found in the common areas of the apartment (ECF No. 49, p.38).  It is clear that the evidence would not have supported the Defendant's "minimal" activity. The Defendant has offered no evidence that he presented to his attorney to contradict the statement of his co-defendant.  It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.* 905 F.2d 218, 219 (C.A.8 (Minn.),1990).

The plea agreement the Defendant read and signed contained an estimated Guidelines level based on the stipulated drug quantity. (ECF No. 32, ¶ 3). The plea agreement further contained the mandatory minimum and maximum penalty. (ECF No. 32, ¶ 9). Additionally, during Rodriguez's change of plea hearing, the District Court reviewed with him the estimated Guidelines level set forth in the plea agreement along with the mandatory statutory minimum and maximum terms of imprisonment. (Sent. Tr., pp. 6 - 8).  Rodriguez informed the District Court he understood he was facing a sentence between 10 and 40 years imprisonment. (Sent. Tr., p. 8).

**C.  Failure to Pursue Issues on Appeal:**

The Defendant next alleges that his attorney was ineffective for "failing to pursue these issues on appeal.  (ECF No. 49, p. 15).

If an attorney has consulted with his client about an appeal, he will not be found ineffective unless he fails to follow "express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). An attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to § 2255 relief. *Barger v. United States*, 204 F.3d 1180, 1181 (8th

Cir. 2000) Where the defendant expressly requests that his counsel file an appeal and counsel fails to do so, thereby depriving the defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal. See *Hollis v. United States*, 687 F.2d 257, 259 (8th Cir.1982); *U.S. v. Saucillo* 2007 WL 522228, 3 (N.D.Iowa) (N.D.Iowa,2007)

For such a claim to succeed, however, the client must show that he instructed his counsel to file an appeal. *Id.* A bare assertion by the petitioner that he made such a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition. *Id.* Moreover, "ineffective assistance of counsel cannot be presumed from the failure to advise that an appeal be taken ..." *United States v. Neff*, 525 F.2d 361, 364 (8th Cir. 1975).

At the sentencing hearing, the District Court informed Rodriguez of his right to appeal and that he must file an appeal within 14 days from the date the Court signed the Judgment and Commitment Order (ECF No. 53, Sen. Tr., p. 37). Rodriguez responded that he understood his appeal rights (*Id.*). The District Court informed Rodriguez that if he wished to appeal and could not afford to do so, he could apply to the Court to appeal without payment of costs *(Id.* at pp. 37-38). Additionally, the District Court informed Rodriguez that if he qualified, his attorney could be paid to represent him on appeal  (*Id.*) and the Defendant stated he understood those rights (Id.).

There is no evidence in the Defendant's record that he ever instructed his attorney to file an appeal.  He has entered one line in his pleadings that he informed his attorney that he "was not happy with my sentence and to file a direct appeal." (ECF. No. 49, p. 22).  There never appears any correspondence from the Defendant to his attorney or to the court inquiring about the status of his appeal.  It is not credible that the Defendant would be sentenced and committed and never

-14-

inquire about the status of his appeal and that the first time he would raise any issue concerning his attorney's failure to appeal would be in his 2255 motion. The Defendant's attorney has filed an Affidavit stating that he was never instructed by his client to file an appeal. (ECF No. 54-1).

The assertion that the Defendant instructed his attorney to file an appeal is not supported by the record.

**D. Evidentiary Hearing:**

A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless " 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.' " *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir.2005) (alteration in original) (quoting 28 U.S.C. § 2255). A section 2255 petition can be dismissed without an evidentiary hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusory. *See Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998). *Evans v. U.S.* 200 F.3d 549, 551 (C.A.8 (Iowa),2000).

A review of the record, as stated above, shows that the Defendant is not entitled to an Evidentiary Hearing because the record conclusively shows that the Defendant is entitled to no relief.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The**

**parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

  Dated this March 19, 2012

               /s/ J. Marschewski
              HONORABLE JAMES R. MARSCHEWSKI
              CHIEF U. S. MAGISTRATE  JUDGE